Good morning, Your Honors. My name is Jan Joseph Bejar and I represent Mr. Thano and his family. Your Honors, the basic issue in this case has to do with the immigration judge's ruling, if you can call it that, on credibility. This Court has held in a number of cases that basically the immigration judge cannot have it both ways. Either a person is credible or he is not. In the oral decision that the immigration judge issued in this case, he found specifically that Mr. Thano was credible and, quote, that there are very few, if any, material inconsistencies in the respondent's testimony that were unexplained. He concludes that Mr. Thano is generally a credible witness. He thought he might have pushed it just a little bit, but basically the D.I.J. found him credible. He did find him credible. Then he finds that he might have embellished as to certain things, but then the judge actually corrects it. Even though he mentions embellishment, he actually corrects it himself. There are three main examples, if you will, where the judge qualifies as embellishment areas which I think that are basically he did not believe or understand. The first one is the judge could not fathom that Mr. Thano could receive two to three threatening phone calls per month, which were later increased to four to five threatening phone calls per month after the socialists took power in 1997, and come out of that physically unscathed. There's been a number of cases, including in this circuit, where this court has found where intimidation and threats have occurred, even over a number of years, with a person not having either physical confrontation or physical harm, to be credible and to be persecution and to actually warrant a finding of asylum. In those cases, though, wasn't there, in each case, wasn't there a little something more than just the threat, or am I misreading those cases? Your Honor, I don't think that you're misreading the cases. I think that they're varied. Lim, for example, which is a decision in this circuit from the Philippines, a person from the Philippines who applied for asylum, there was no physical confrontation. There were threats. There were phone calls. There were letters. But there was never any physical confrontation, which is different from our case because in our case, there actually was physical confrontation because Mr. Thano received all these threats, and it escalated. It escalated from just telephone threats to burglary of his store, then eventually an armed robbery. Now, this says, well, who was ever making the threats was also doing the physical stuff, the burglary of the store. Your Honor, we believe that that is true. Mr. Thano. But there's no evidence of that, is there? There is no direct evidence of that, but as this Court knows, because this Court has held this way before, it is not really possible to ask one's persecutor for a note confirming that he or she is actually doing this. Very often, persecutors act in surreptitious manners. Your car gets blown up. You get something happens to you, and then you get a phone call, by the way, this was not an accident, and keep it up, and this is going to get worse. So that's not uncommon, Your Honor. And I would point to this Court's case in Thomas, a South African person who was related to a very abusive foreman. And very much like in the Thano case, Ms. Thomas was in a situation where the threats began escalating from phone calls, the poisoning of her dog, and eventually the straw that broke the camel's back in her case was a threat of kidnapping of her children. She made complaints to the police, and the police did the same thing that they did in Thano. When we catch the guy, we'll let you know, tongue in cheek. They never did anything, just as in Mr. Thano's case, they never did anything. And he has made a very clear allegation that the police are an arm of the state. The state was controlled at that time by the socialists, and that was the party that he was politically opposed to. He's reporting, he's not reporting the threats, he's reporting the burglary and the robbery. Correct. But there was no evidence in the record that the burglary and the robbery were politically motivated. We have numerous phone calls, which Mr. Thano attributes to that, but we don't have any evidence that there was anything other than an economic motive. Mr. Thano attributes them to that, but we don't have any hard evidence of that, do we? We do not have any hard evidence of that. No, we don't. But we do know that this is not an uncommon thing. And street crime is very often confused with or hides behind political motivations or the other way around. Yeah. Mr. Behar, one of the things that you just mentioned, though, is that oftentimes your car blows up and then somebody calls and says this wasn't an accident. But there isn't a phone call that follows up and says the burglary wasn't an accident, it wasn't an economic crime. That's correct, Your Honor, but it doesn't necessarily mean that somebody calls you and says what happened to your car was not an accident. But it could be that your car gets blown up and then you get a phone call which simply says you better leave the country, you better stop your political activities, you dirty ballast, which is what happened in his case. No, there was nothing that said, by the way, I robbed your store and next time I'm going to kill your wife. No, it wasn't that way. That's not what Mr. Thano has said. He's been honest. He could have embellished it, to use the judge's terms. He could have said, yes, they told me this after that. He didn't do that. But that wouldn't be true, which means then that we are left with crimes that could be economic or could be political, but for which there is no evidence to demonstrate that it is, in fact, political. Let's assume, Mr. Behard, that the burglary and the robbery and perhaps even the kidnapping are not politically motivated. On the mere threats alone, would that be sufficient to overturn the IJA's decision? I'm assuming here that the IJA finds him credible. We'll take away the embellishment in that he's getting two to three calls before 1997 and four to five calls a month after 1997. I think there is a basis to do that because political opinion is not the only basis upon which one could claim persecution. As this Court has found in other cases, social group in some circumstances means belonging to a certain family, for example. Okay. And what would the social group be here? The social group could be being a member of the Thano family, Your Honor. Well, but we don't have any evidence that his family members are being persecuted outside of him, right? Just him and the threats were also – Okay. I'm going to assume that the phone calls – I want you to assume that the phone calls are politically motivated. Are the phone calls alone, without anything else, sufficient for us to overturn the BIA's decision? Well, I guess it would be the immigration judge's decision that BIA just affirmed. No, the IJA's decision has become the decision of the BIA. Yes, it would. It would – if those phone calls alone were politically motivated, you would have a basis, a clear basis to overturn the BIA's decision. Okay. On the basis of what? On the basis of what cases? Because, well, in Lim, this Court found that there was a – not a basis for past persecution, but there was a basis to find future persecution. In Aguilera-Cota, which is also out of this circuit, the Court found that there was a basis, even though there was no physical confrontation, there were letters, there were threats, and I think the person was followed to his house. What case was that? Aguilera, A-G-U-I-L-E-R-A-Cota, C-O-T-A. Okay. And in that case, this Court found that there was – without physical harm, the threats were sufficient. Your Honors, I have a minute left. I'd like to reserve. Fine. That would be fine, Counsel. Thank you. Thank you. Counsel. Your Honor, may it please the Court, Golden Greenstein on behalf of the Respondent Alberto Gonzalez. A reasonable fact finder is not compelled to conclude that the petitioner met his burden of proof for asylum withholding under 241b-3 or withholding under the Convention Against Torture. First of all, there has been absolutely no past persecution in this case. The petitioner did not establish past persecution on account of his political opinion. The IJ properly found no nexus between the three crimes endured by the petitioner and any political opinion. In terms of the 1998 burglary, there's absolutely no proof that the incident had any connection to the government. The petitioner admitted on direct examination that he did not know who took the items from the store. Counsel, does the government deny that the phone calls were politically motivated? The government is assuming that the phone calls were politically motivated. Okay. So we're going to assume that the phone calls are politically motivated. Yes, because we don't have a negative credibility to buy them. And the phone calls alone are not sufficient? No, absolutely not. And why not? Because all of the other cases decided by the circuit require threatening phone calls and something else. For example, in Lim, are we dealing with, I'm sorry, are we dealing with past persecution first or a well-founded fear? Because in Lim, the court held that the phone calls did not establish past persecution, but the phone calls in conjunction with other incidents established a well-founded fear of persecution. I could address them consecutively. In terms of a well-founded fear of persecution, this case contrasts with Lim because Lim received threatening phone calls as well as threatening letters tied with a black ribbon. Three of Lim's former colleagues in the same investigation were actually murdered. There's no evidence that any harm befell anyone in a similar situation to the petitioner. Moreover, the petitioner never tried relocating to a different area of Albania, and there's no evidence that he even changed his phone number despite all of these phone calls. Accordingly, the respondent posits that he has not established a well-founded fear of persecution based upon the phone calls, especially since there's absolutely no nexus between the three physical incidents that the petitioner endured, namely the burglary, the robbery, and the threatened kidnapping, and the phone calls. The petitioner was never told during these incidents that we're doing this because of your political opinion. In terms of the February 2000 robbery, the petitioner admitted on cross-examination that the robber said nothing to him about his politics, and that's at page 105 in the record. The article submitted by the petitioner that spoke of this robbery states nothing about the crime being politically motivated. When confronted with this article on cross-examination, the petitioner had absolutely no explanation as to why the crime was not attributed to his politics, and that's at page 107 in the record. In terms of the April 2000 extortion attempt, the petitioner was told by the masked men that they wanted $30,000 or they would abduct his children. They didn't tell him, please stop your politics or we're going to abduct your children. It was clearly financially precipitated, and this is especially proven by the fact that the very own article submitted by the petitioner from an Albanian newspaper states in describing this extortion attempt, and this is in the record at page 338, this remote area of Fieri Town is the most attacked by the street crime because it is isolated and is far away from the national road. The thefts by the masked people, especially in the small area of the remote shops, are very numerous. Once again, there's absolutely nothing mentioned about crimes taking place based upon political membership. It's all attributed to financial imperatives. At this point also, the court, the respondent would like to point out to the court the case of Simonyi Akovavi-Gonzalez, and the respondent apologizes for not submitting a 28-J letter. This case was decided last Wednesday and actually is not favorable to the government. The site for this case is 2005 Westlaw 2140359, and the case discusses when threats can comprise past persecution. Notably, Ms. Simonyi Akovavi-Gonzalez endured anti-Semitic profanities, scribbled on the walls of her apartment entryway, human feces smeared on her mailbox, fire set in her mailbox, repeated slashings of her front door. One call announced that her Jewish friends had been killed and warned that the same fate lay in store for the rest of the Jews in Kaliningrad. She was also attacked by two men while walking home and strangled and called a Jewish bitch and threatened. Another incident, an assailant slashed her wrist, and two men began pounding on her door, threatening to kill her if she did not let him in, and referring to her home as a Jewish snake's nest. Finally, she called the police and they refused to help. The court, under those circumstances, held that repeated death threats, especially when those threats occurred in conjunction with other forms of abuse, require a filing of past persecution. Well, that's the law anyways. I mean, I don't think that's particularly startling. It's still facially applicable to this case, Your Honor, and I just wanted to point it out. Okay, but now what we've got here is we've got these threats which continued on as to future persecution, fear of future persecution, and there were a great number of them, according to testimony, we must believe, and they were politically motivated, according to the evidence, as we must view it. So you have politically motivated future threats of harm going to the question of future persecution, and yet you say, and we have cases that say threats alone may be sufficient as to future persecution, but here you say, in this case, they were not sufficient because why? Because, first of all, all the threats were telephonic with the exception of one or two personal ones, and the record is unclear as to whether or not it's just one threat or two threats. None of these threats were ever carried out. None of these threats were ever reported to the police, which is, frankly, astounding. Consider how many the petitioner allegedly received. He should have sought the help of the police, especially since these threats were telephonic and presumably could have been tracked. Finally, none of these phone calls referenced any of the physical incidents endured by the petitioner. There's absolutely no nexus between the phone calls and anything else that ever befell the petitioner. These phone calls stand alone, and this Court would have to decide that threatening phone calls in the absence of any physical harm would have to establish. Let me rephrase. For the Court to hold that the petitioner established either past persecution or a well-founded fear of persecution, the Court would have to hold that these phone calls standing alone mandate such a finding. And the case law simply does not hold that. How long did they go on? It was a couple of years? They went over the course of, I believe, seven years. They were heavier later on when the Socialist Party came into power. And nothing ever happened as a result? Absolutely nothing. The petitioner tries to create a nexus between the economically motivated burglary, the economically motivated robbery, and the economic... We don't know that they're economically motivated. It's just that we have a failure of proof that they are politically motivated. I think there's evidence in the record that they were indeed economically motivated. For example, the 2,000 extortion attempt. Why would they ask for $30,000 instead of stating, please give up your politics or we're going to abduct your children? During the 2,000 robbery, the petitioner merely had all of his money taken from him. They didn't state we're taking all your money because we don't like your politics. None of the articles that describe these incidents that were actually made in Albania state that there was any nexus to the respondent's, I'm sorry, to the petitioner's or anybody else's politics. Your Honor, are there any other questions? I think we're good, counsel. Thank you very much. Mr. Behar, you have some time remaining. Your Honor, let's not forget that this is Albania we're talking about, not the United States. Why didn't you call the police? The police is part of the state. I personally would be more afraid of the police in a place like Albania than the actual criminals on the street probably. Although, counsel, it's curious that he receives calls, which amount, if his numbers are correct, and we're going to assume that they are, to hundreds of calls, which would be very, very disturbing, very disturbing to any of us, and yet there's no other, there's nothing plus. There's nothing other than phone calls. Well, it did escalate. It went from phone calls to eventually the robbery, the burglary, and the kidnapping. But the robbery and the burglary, again, we don't have any evidence that those are politically motivated. So if we take those out, there isn't anything else here. Nobody seems to make any good on their threats, and talk is cheap. That's correct. But I think that when you take the cheap talk and you add it up, it actually becomes quite substantial, especially over a number of years like that. And contrary to what counsel has argued in the brief in here, Mr. Plano did take steps. He took his children out of school for three years. He took, when the threat of kidnapping to his children came about, he not only took them out of school, he at that point took them out of the country. He didn't move them to a different neighborhood. And, no, he didn't change his phone number. You don't change your phone number in Albania like you do in the United States, where you have in one city four area codes. So it's not as easy. The only other point I would make, Your Honor, is that in a place like Colombia, for example, you have examples of guerrillas, totally politically motivated, pairing up with street gangs and drug lords, all to accomplish their own separate purpose through the same common means. There's no reason why we cannot believe that Mr. Tano's or the threats to Mr. Tano were politically motivated. They may or they may not be tied to the actual events that did happen to him, but there is no question that he received these calls. And I think that those calls alone are sufficient to establish, if not past persecution, at a very minimum, future persecution. Roberts. Thank you, Mr. Behar. We appreciate the arguments of both counsel.
judges: Farris, Thompson, Bybee